UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **JIMMY JOHN'S FRANCHISE, LLC,** successor-in-interest to **JIMMY JOHN'S FRANCHISE, INC.,** an Illinois limited liability company,<br><br>　　　　Plaintiff / Counter-defendant,<br><br>　v.<br><br>**WILLIAM KELSEY,**<br><br>　　　　Defendant / Counter-plaintiff. | Case No. 08-2040 |

## OPINION

This matter is before the court on Defendant/Counter-Plaintiff William Kelsey's Motion for Summary Judgment (#6) and Plaintiff/Counter-Defendant Jimmy John's Franchise's Cross Motion for Summary Judgment (#18).[1] For the reasons that follow, William Kelsey's Motion for Summary Judgment is GRANTED and Jimmy John's Franchise's Motion for Summary Judgment is DENIED.

FACTS

On November 8, 2001, Arllo of Brownsburg, LLC (Arllo) entered into a Franchise Agreement (Agreement) with Jimmy John's Franchise (JJF) and agreed to became a franchisee for two locations of Jimmy John's Gourmet Sandwiches. The Agreement contained the following

---

[1] Jimmy John's Franchise has also filed a Motion for Oral Argument on its Cross Motion for Summary Judgment (#19). This court concludes that this matter can be decided on the written submissions to the court and oral argument is unnecessary. Therefore, the Motion for Oral Argument is DENIED.

language relevant to the present litigation:

> Nothing in this agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than the Franchisor or Franchisee and such of their respective successors and assigns as may be contemplated by this Agreement any rights or remedies under or by reason of this Agreement.

William Kelsey, as a principal of Arllo, also executed a Guaranty of Arllo's obligations under the Agreement on November 8, 2001, which states:

> [Kelsey] hereby personally and unconditionally (1) guarantees to [JJF], and its successors and assigns, for the term of the Agreement and thereafter as provided in the Agreement, that Arllo of Plainfield, Inc., ("Franchisee") shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Agreement; and (2) agrees personally to be bound by, and personally liable for the breach of, each and every provision in the Agreement, both monetary obligations and obligations to take or refrain from taking specific actions or to engage or refrain from engaging in specific activities, including, without limitation, the provisions of Paragraph XV and the confidentiality and arbitration obligations. [Kelsey] waives: (1) acceptance and notice of acceptance by [JJF] of the foregoing undertakings; (2) notice of demand for payment of any indebtedness or non-performance of any obligations hereby guaranteed; (3) protest and notice of default to any party with respect to the indebtedness or nonperformance of any obligations hereby guaranteed; and (4) any right he may have to require that an action be brought against [Arllo] or any other person as

a condition of liability; and (5) any and all other notices and legal or equitable defenses to which he may be entitled.

On August 11, 2004, Arllo filed a petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana after shutting down its Jimmy John's locations. The Bankruptcy Petition listed Kelsey as an unsecured creditor and listed his claim in the amount of $84,000 for a promissory note incurred in 2003. On July 29, 2005, the Bankruptcy Trustee initiated an adversary proceeding in the Bankruptcy Court against JJF alleging breach of the Agreement. On October 19, 2005, the Bankruptcy Trustee voluntary dismissed the adversary proceeding after the parties agreed to submit the case to arbitration pursuant to the terms of the Agreement. On March 13, 2006, JJF asserted a counterclaim against the Trustee to recover for Arllo's obligations under the Agreement. On April 27, 2006, JJF also filed a Third Party Complaint against Kelsey based on Kelsey's Guaranty of Arllo's obligations under the Agreement. Kelsey then asserted a counterclaim against JJF asserting he was a third party beneficiary to the Agreement and was therefore entitled to recover individually for JJF's alleged breach of the Agreement.

On April 5, 2007, the case proceeded to arbitration. At the hearing, JJF submitted a calculation of the amount due by Arllo and by Kelsey on his Guaranty for the remaining term of the Agreement in the amount of $136,248.97. Kelsey's damage calculation was the full amount of Kelsey's payment on his assumption of Arllo's loan with Old National Bank, which totaled $138,895.10. On June 12, 2007, the Arbitrator rendered a decision ordering: (1) the Trustee to pay JJF $10,196 on JJF's counterclaim; (2) JJF to pay the Trustee $134,534 for the Trustee's claims against JJF; (3) JJF to pay Kelsey $138,895 on Kelsey's counterclaim; and (4) JJF's counterclaim against Kelsey denied. The Arbitrator did not issue any findings of fact or conclusions of law in

issuing his award.

On July 16, 2007, JJF filed a complaint in the Bankruptcy Court for the Southern District of Indiana to Vacate or Modify the Arbitration Award. On September 6, 2007, the Trustee and Kelsey filed an Answer and Counterclaim to Confirm Arbitration Award. Thereafter, JJF paid the Trustee the portion of the award directed to the Trustee and the Trustee dismissed all claims against JJF. The Bankruptcy Court thereafter dismissed the case for lack of jurisdiction. JJF then instituted the instant action against Kelsey.

## ANALYSIS

Pursuant to the Federal Arbitration Act (FAA), this court must affirm an arbitration award unless it is "vacated, modified, or corrected as prescribed in §§ 10 and 11" of the FAA. Hall Street Assoc., L.L.C. v. Mattel, Inc., __ U.S. __, 2008 WL 762537 at *4 (2008). Pursuant to § 10, the following are grounds for this court to set aside an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Courts will also set aside awards that are in "manifest disregard of the law,"

although the Seventh Circuit has interpreted this language so narrowly that it is confined to cases in which arbitrators "'direct the parties to violate the law.'" Wise v. Wachovia Secs., LLC, 450 F.3d 265, 267 (7th Cir. 2006), quoting George Watts & Son, Inc. v. Tiffany & Co., 248 F.3d 577, 580 (7th Cir. 2001). The Seventh Circuit has stated that "[j]udicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all." Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 706 (7th Cir. 1994). While "[i]t is tempting to think that courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, . . . they are not." Wise, 450 F.3d at 269. "When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake . . . ." Wise, 450 F.3d at 269. "That is why in the typical arbitration . . . the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all." Wise, 450 F.3d at 269. The court will uphold the decision of the arbitrator unless "'there is no possible interpretive route to it, so a non-contractual basis can be inferred.'" Prostyakov v. Masco Corp., 513 F.3d 716, 723 (7th Cir. 2008), quoting Cuna Mut. Ins. Soc'y v. Office & Prof'l Employees Int'l Union, Local 39, 443 F.3d 556, 562 (7th Cir. 2006). "A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Cremin v. Merrill Lynch, Pierce, Fenner & Smith, 434 F. Supp. 2d 554, 559 (N.D. Ill. 2006).

JJF argues that the arbitration award should be vacated because the Arbitrator exceeded his powers pursuant to §10(a)(4) and because the Arbitrator manifestly disregarded the law. JJF argues that the Arbitrator either did not read the Agreement or disregarded the Agreement and implemented

his own notion of what is reasonable and fair. Specifically, JJF argues that the arbitration award fails to account for amounts due under the Guaranty executed by Kelsey despite a finding that Arllo breached the Agreement. Second, JJF argues that Kelsey recovered on a third party beneficiary theory which was expressly forbidden by the Agreement.

JJF first argues that the Arbitrator's decision should be vacated with regard to the denial of JJF's counterclaim against Kelsey for amounts due under the Agreement based upon the execution of the Guaranty by Kelsey. JJF argues that the arbitration award of $10,196 in fees owed to JJF indicates the Arbitrator found Arllo was in default under the terms of the Agreement. JJF asserts that the $10,196 awarded to JJF from Arllo comprises a portion of the fees due to JJF for the time up to and including the date Arllo ceased operating. JJF indicates the Arbitrator found Arllo did not have to pay JJF for the remaining fees and other amounts due for the remainder of the Agreement because $10,196 was the amount due at the time of Arllo's bankruptcy filing. JJF argues that, pursuant to the Guaranty, Kesley is responsible for all the amounts due by Arllo including those amounts due after the time of the bankruptcy filing. JJF essentially asserts there is no basis under which the Arbitrator could have denied its counterclaim against Kelsey based upon the Guaranty, particularly in light of the clause in the Guaranty under which Kelsey waives "any and all other notices and legal or equitable defenses to which he may be entitled."

As discussed above, this court cannot vacate an arbitrator's award where the contract interpretation is "incorrect or even wacky" but rather where the "arbitrators had failed to interpret the contract at all." <u>Wise</u>, 450 F.3d at 269. One way in which the Arbitrator could have come to his conclusion in the instant case is based upon the covenant of good faith and fair dealing. Under

Illinois law[2], a covenant of good faith and fair dealing is implied into every contract absent express disavowal. See LaSalle Business Credit, Inc. v. Lapides, 2003 WL 722237 at *14 (N.D. Ill. 2003), citing Chemical Bank v. Paul, 614 N.E.2d 436, 442 (Ill. App. Ct. 1993). There was no express disavowal of the covenant of good faith and fair dealing in Kelsey's Guaranty despite the blanket waiver of defenses. Regardless of the propriety of a finding of a breach of this covenant, the Arbitrator could have based his ruling on this principle. The fact that the Arbitrator found in favor of the Trustee on the breach of contract claim against JJF supports an inference that the Arbitrator could have made such a finding. As stated above, the court will uphold the decision of an arbitrator unless "'there is no possible interpretive route to it, so a non-contractual basis can be inferred.'" Prostyakov, 513 F.3d at 723, quoting Cuna Mut. Ins. Soc'y, 443 F.3d at 562. Because there is at least one potential interpretive route to the Arbitrator's decision, this court must uphold the Arbitrator's decision. Accordingly, this court concludes JJF has failed to meet its burden of demonstrating the Arbitrator's decision should be vacated.

This court reaches the same conclusion as concerns the third party beneficiary award to Kelsey. JJF argues that the intent of the parties to preclude any claims for third party beneficiaries under the Agreement is unequivocal and, thus, the Arbitrator exceeded his authority by ignoring this clause of the contract and making an award to Kelsey as a third party beneficiary. However, a clause in a contract which precludes third-party beneficiaries does not in all circumstances preclude third party beneficiary claims. In American United Logistics, Inc. v. Catellus Dev. Corp., 319 F.3d 921, 930-31 (7th Cir. 2003), the Seventh Circuit, applying Illinois law, held that a clause in a

---

[2] The Agreement states that it shall be interpreted and construed under the laws of the state of Illinois.

contract precluding third party beneficiary claims is not the end of the issue. In American United Logistics, a tenant lease contained a clause which stated that "nothing herein is intended to create a third party benefit." American United Logistics, 319 F.3d at 931. However, the Seventh Circuit found the lease ambiguous because another section of the lease conferred a benefit on the third party. American United Logistics, 319 F.3d at 931. Furthermore, there was evidence of discussions during contract negotiations indicating the parties intended the third party to receive a benefit from the contract. American United Logistics, 319 F.3d at 931. Likewise, in the instant case, the Arbitrator could have found that other clauses of the Agreement and discussions which occurred at the time of the contract negotiations indicated an intent to confer a benefit to Kelsey. Whether such a conclusion is right or wrong is not for this court to decide. "[M]isinterpretation of contractual language, no matter how 'clear,' is within the arbitrator's powers; only a decision to ignore or supersede language conceded to be binding allows a court to vacate the award." International Union of Operating Eng'rs v. J.H. Findorff & Son, 393 F.3d 742, 745 (7th Cir. 2004). As previously stated, this court cannot overturn the decision of an arbitrator simply where the "contract interpretation is incorrect or even wacky." Wise, 450 F.3d at 269. Based upon the very limited record presented by JJF, this court cannot conclude that the Arbitrator failed to interpret the contract at all. Wise, 450 F.3d at 269.

  JJF argues, in the alternative, that the arbitration award must be modified pursuant to Section 11 of the FAA because the award to Kelsey constitutes a double recovery. JJF asserts that the award to Kelsey was made for the full amount of a loan made to Arllo by Old National Bank which was assumed by Kelsey and Otey in the amount of $138,895.10. JJF argues that a portion of this amount will be paid to Kelsey out of the Arbitrator's award to Arrlo. JJF asserts the Arbitrator awarded

Arrlo the amount of its liabilities to its unsecured creditors as set forth in Schedule F of Arllo's bankruptcy petition. Schedule F of Arllo's bankruptcy petition lists Kelsey as an unsecured creditor on a promissory note in the amount of $84,000. In response, Kelsey asserts that the promissory note referenced in Schedule F, which the schedule indicates was incurred in 2003, is an "entirely separate debt that [Arllo] owes Mr. Kelsey." Kelsey points to documents from Old National Bank which indicate the amount of the note from Kelsey was $69,477.50 and was executed on August 30, 2004.

Pursuant to § 11 of the FAA, this court can modify an arbitration award where "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). Pursuant to this provision, the court may modify an award where the "arbitration award orders a party to pay damages that have already been paid or which are included elsewhere in the award" to prevent a double recovery. Eljer Mfg., Inc. v. Kowin Dev. Corp., 14 F.3d 1250, 1254 (7th Cir. 1994). In Eljer, the Seventh Circuit determined that the district court properly modified a damage award because the basis for the arbitrator's award was "no mystery" and the court did not have to speculate as to what the arbitrator's award was attempting to redress. Eljer, 14 F.3d at 254. Such is not the case here. The amount of the promissory note listed in Schedule F of the Bankruptcy Petition is for a different amount and indicates it was incurred at a different time from that incurred by Kelsey to Old National Bank. Thus, the record does not conclusively demonstrate that Kelsey was awarded a double recovery by being awarded the amounts owed to Old National Bank by the Arbitrator and receiving the amount owed under the promissory note in Arllo's bankruptcy proceeding. Accordingly, this court cannot modify the arbitration award.

While JJF may contend that the Arbitrator erred in his decision, "[a]rbitration does not

provide a system of 'junior varsity trial courts' offering the losing party complete and rigorous de novo review." Eljer, 14 F.3d at 1254, quoting National Wrecking Co. v. International Bhd. of Teamsters, Local 731, 990 F.2d 957, 960 (7th Cir. 1993). Due to the deference this court must afford the Arbitrator's decision, this court must grant summary judgment in favor of Kelsey.

IT IS THEREFORE ORDERED:

(1) Defendant's Motion for Summary Judgment (#6) is GRANTED.

(2) Plaintiff's Cross Motion for Summary Judgment (#18) is DENIED.

(3) Plaintiff's Motion for Oral Argument on its Cross Motion for Summary Judgment (#19) is DENIED.

(4) Defendant's Motion for Leave to File Supplemental Authority (#24) is GRANTED.

(5) This case is terminated.

ENTERED this 10th day of April, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE